# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN K. KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 12-2174-JWL |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I. Background

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI alleging disability beginning November 5, 2008. (R. 13, 162-74). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) erred both in evaluating the credibility of his allegations of symptoms resulting from his impairments and in evaluating the medical opinion evidence. He argues that the decision should be reversed outright and remanded for an immediate award of benefits. The court finds no error.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff alleges that he is unable to stand or walk for any extended time because of pain in his lower back, feet, and ankles. He alleges that he is therefore unable to perform past relevant work, and because he is also over age fifty-five and has no transferable skills, he is disabled in accordance with the Medical-Vocational Guidelines Rule 202.06. Consequently, he believes the ALJ erred in finding that his allegations of pain which would preclude extensive walking and/or standing are not credible, and erred in discounting the medical opinion of Dr. Mongeau.

## II.     Credibility

The court's review of an ALJ's credibility determination is deferential. Such determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). They "are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Moreover,

> [b]ecause a credibility assessment requires consideration of all the factors "in combination," [] when several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, [a court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination.

Bakalarski v. Apfel, No. 97-1107, 1997 WL 748653, *3 (10th Cir. Dec. 3, 1997) (first emphasis added, second emphasis in original) (quoting Huston v. Bowen, 838 F.2d 1125, 1132 n.7 (10th Cir. 1988) (citation omitted)).

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston, 838 F.2d at 1133); Hackett, 395 F.3d at 1173 (same).

The decision reveals that the ALJ discussed the evidence--both positive and negative--regarding credibility, and determined that Plaintiff's allegations are not credible. (R. 17-19). The ALJ specifically discussed the evidence regarding five of Plaintiff's complaints of symptoms, and determined that evidence does not support those complaints. Id. at 17, 18. He discussed Plaintiff's allegations of edema, and noted that Dr. Stanley had treated Plaintiff for edema before the alleged onset date, but that after that date no physician, including Dr. Mongeau, Dr. Cornett, or Dr. Riley had reported positive clinical signs or findings of edema. (R. 17). He noted that Dr. Riley had diagnosed

5

Plaintiff with peripheral neuropathy, but that Dr. Riley's physical examinations were all negative for signs and findings of neuropathy, and that Dr. Cornett and Dr. Mongeau found no medical evidence of neuropathy. Id.

The ALJ noted that the medical records support some of Plaintiff's complaints of back pain, but that Plaintiff has sought relatively little treatment for back pain. He stated that Plaintiff did not complain of back pain to Dr. Stanley, and that although he had complained of back pain to Dr. Riley on one visit, he made no further mention on later visits. He recognized that Dr. Cornett and Dr. Mongeau made positive examination findings of back pain, but also found that neurological examinations for motor, sensory, and reflex loss were all normal, and that Plaintiff demonstrated 100 pounds of grip strength in his right upper extremity and 95 pounds of grip strength in the left. Id. 17-18.

The ALJ recognized that Plaintiff is obese, and considered it favorably in his credibility determination. Id. at 18. He concluded that obesity would limit Plaintiff's mobility, and for that reason included postural limitations in the RFC assessed. Id. He considered Plaintiff's allegations of restless leg syndrome, and noted that even during a full consultation for sleep disturbance at the University of Kansas Medical Center "there were no findings or mention of restless leg syndrome," and that no physician in the record made a diagnosis of restless leg syndrome. (R. 18). He considered Plaintiff's diabetes, and recognized that Plaintiff had mildly elevated hemoglobin A1C and elevated glucose levels. Id. He noted that there were no <u>examination findings</u> of peripheral neuropathy,

retinopathy, or end organ damage resulting from diabetes, and that Dr. Riley had stated that Plaintiff's diabetes was well controlled. Id. (citing Ex. 13F/15 (R. 446)).

The ALJ also discussed several other factors affecting the credibility determination. Id. at 18-19. He considered Plaintiff's activities of daily living, noting that Plaintiff reported spending his day taking short walks and going to the public library to check on employment processes, and that he reported taking his eleven and eight-year-old grandchildren to school, and watching them three times a week. Id. The ALJ acknowledged that Plaintiff's "solid work history" supports his credibility. Id. at 19. He noted Plaintiff's testimony that the majority of his medications helped his symptoms, and that Plaintiff is not taking stronger narcotic pain medication. Id. Finally, he noted that Plaintiff "has not always followed through with the prescribed treatment for his pain," specifically noting that Plaintiff had not followed through on a referral for pain management or on an appointment with an orthopedist. Id.

Plaintiff's brief argues that the facts should lead to a different credibility conclusion than reached by the ALJ. Essentially, he seeks to have the court reweigh the evidence and substitute its credibility findings in this matter for those of the ALJ. However, as noted above, the court may not do so. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

For example, Plaintiff tries to show error in the ALJ's finding that although Plaintiff had complained of back pain to Dr. Riley in one visit, he made no further mention in later visits. (Pl. Br. 10). Plaintiff does not argue that the ALJ erred and that

7

he in fact made further complaints of pain to Dr. Riley. Rather, he argues that, "in July 2009 [Dr. Riley] noted that the plaintiff indicated that Robaxin was not much help, and that Flexeril made him sleepy, and Dr. Riley suggested Soma, indicating that he was trying to treat the plaintiffs back pain." Id. (citing R. 434). However, Plaintiff reads entirely too much into Dr. Riley's treatment record. As Plaintiff admits, Dr. Riley's records are not very detailed, and are largely illegible. Nonetheless, the record to which Plaintiff cites apparently states, "Robain no[t?] much help," and "Flexeril ➔ Sleepy." (R. 434). Moreover, in a block captioned "Treatments/Mgmt Options/Course," the physician has written what appears to be "Soma," but that entry has had a line drawn through it. Id. It is these cryptic entries to which Plaintiff appeals to assert that Dr. Riley "was trying to treat the plaintiff's back pain." However, that treatment record simply has no mention whatever of back pain. Moreover, the "Chief Complaint" is listed as "Skin tag removal warts on hands." (R. 434). In the "Clinical Impressions" block, the physician wrote only "Warts/Skin Tag." Id. This is insufficient evidence to show error in the ALJ's evaluation of these records.

Plaintiff also argues that, contrary to the ALJ's findings, he had taken the narcotic pain medication "Vicodin (hydrocodone and acetaminophen) since at least 2005." (Pl. Br. 11). Again, Plaintiff reads too much into a limited record. The record to which Plaintiff cites is a medication refill record showing that Plaintiff was prescribed Vicodin on July 13, 2006, and showing a "last fill" date of December 15, 2005. (R. 336). Even assuming that Plaintiff actually took the Vicodin he was apparently prescribed in

8

December 2005 and July 2006, that does not help Plaintiff's case because both dates precede his alleged onset of disability and both dates are during times when he remained gainfully employed.

Plaintiff also argues that it was error for the ALJ to rely upon his alleged failure to follow through with prescribed treatment without first considering any explanation Plaintiff may have for the failure. (Pl. Br. 11). However, Plaintiff does not argue before this court that there is an explanation justifying his failure to follow prescribed treatment. He implies that he lost his insurance and was unable to afford to follow that treatment. But, although Plaintiff quit working and his insurance was cancelled, he testified that he became eligible for medicaid at least by May 2009. (R. 36). He also argues that the ALJ's failure at the hearing to specifically ask why Plaintiff did not follow the treatment recommended was an improper attempt to "hide the ball" from Plaintiff on this issue. (Pl. Br. 11) (citing Romero v. Astrue, No. 08-2584-JWL, 2009 U.S. Dist. LEXIS 105092 at *27 (D. Kan. Sept. 30, 2009)). The court does not find any suggestion in this case that the ALJ attempted to "hide the ball" from Plaintiff or his counsel regarding the issue of failure to follow recommended treatment. As noted above, Plaintiff testified that he became eligible for medicaid, and there is simply no suggestion in the record that he was unable to afford the recommended treatment either at the time it was first suggested (when Plaintiff had health insurance) or thereafter when Plaintiff became eligible for medicaid.

Further, the facts in Romero, are significantly different from those presented here. There, a medical expert testified at the hearing that Romero's mental condition met the criteria of two different mental impairments. Romero v. Astrue, No. 08-2584-JWL, 2009 WL 3190460, *9 (D. Kan. Sept. 30, 2009). The ALJ did not question the expert with regard to the details of her opinion or of a specific onset date, but later determined that the onset date was much later than the date alleged by Plaintiff and acknowledged by the medical expert at the hearing. Id. The court determined that if the answers to questions regarding the expert's opinion were material to the ALJ's determination, it was the ALJ's duty to seek them when she questioned the expert. Id. In Romero, the question of onset date was reasonably suggested by the testimony at the hearing and should have been followed up by the ALJ. Here, there was no indication anywhere in the record that there was any justifiable basis for Plaintiff's failure to follow recommended treatment, and Plaintiff does not point to such a basis now. Moreover, Plaintiff testified that he was eligible for medicaid, thus removing cost as a basis for refusal to follow the recommended treatment. Romero does not provide reason to find error in the ALJ's credibility determination.

Plaintiff does point to one error in the ALJ's findings regarding credibility. The ALJ stated that Plaintiff did not complain of back pain to Dr. Stanley. (R. 18). But, as Plaintiff points out, he reported to Dr. Stanley twice before his alleged onset date, in April 2007, and July 2008 that he had problems with back pain. (R. 333, 350). In April 2007 Plaintiff came to visit Dr. Stanley for the first time in more than a year and reported that

10

he was "starting to have lots of problems again with his back," after a laminectomy which resolved his earlier problems in May 2000. (R. 333). Dr. Stanley referred Plaintiff for an MRI of his lumbar spine, and prescribed Skelaxin, 800mg ibuprofen, and Ultram for his pain. Id. The MRI revealed "mild to moderate relative spinal stenosis," and "[n]o disc protrusion or nueral foraminal compromise." (R. 344). The next time Plaintiff reported back problems to Dr. Stanley was more than a year later, in July 2008. At that time, the record reveals that Plaintiff went to see Dr. Stanley "for evaluation of right shoulder and right ankle pain for at least a month" and Dr. Stanley noted that Plaintiff "still has back problems" but that he "never did see therapy or pain management from last time." (R. 350). The record reveals that Plaintiff was "referred to Pain Management for possible epidural injection," id., and as the ALJ noted, there is no record that Plaintiff (who still had medical insurance at that time) ever went to pain management. (R. 19).

Although this is technically an "error" in the ALJ's credibility findings, the court's review reveals that the error is harmless. First, the visits to which Plaintiff refers occurred before his alleged onset date of disability, and for that reason, it appears that the ALJ simply did not consider them relevant to the credibility of Plaintiff's allegations of pain during the time at issue after his alleged onset date. Further, the court's review of the ALJ's credibility analysis reveals that the remainder of that analysis is supported by substantial evidence in the record viewed as a whole. The ALJ provided a thorough analysis and included in his discussion those record factors which tend to support the credibility of Plaintiff's allegations.

The court finds the case of Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004) instructive in these circumstances. In that case, the ALJ found the plaintiff's allegations of disabling pain were not credible, and one of the reasons given for doing so was because "the evidence fails to reflect that claimant sought any definitive treatment." 385 F.3d at 1274. The court noted that the plaintiff was "correct that 'the ALJ may not discredit [her] for a lack of treatment or aggressive testing when . . . she has a legitimate reason for [failing] to get additional treatment, such as a lack of funds.'" Id. (quoting the plaintiff's brief which quoted Thompson, 987 F.2d at 1490). Although the Branum court expressed "some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores," it concluded "that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record," and it affirmed the decision below. Branum, 385 F.3d at 1274. Here, the ALJ provided a thorough credibility analysis which is supported by the record as a whole. Although he erroneously stated that Plaintiff had never mentioned back pains to Dr. Stanley, the balance of the analysis is supported by substantial evidence in the record. Giving the ALJ's credibility determination the deference it is due, the court finds no error requiring remand.

## III. Evaluation of the Medical Opinions

The ALJ evaluated the medical opinion evidence of the non-treating physicians, Dr. Mongeau and Dr. Cornett, and of the non-examining physicians Dr. Bullock, Dr. Peril, and Dr. Eades. (R. 19-20). He accorded "little weight" to Dr. Mongeau's opinion

that Plaintiff would need handrails to safely navigate stairs, and would be at increased risk of falling on uneven surfaces without a hand held assistive device, because that opinion is not consistent with Dr. Mongeau's examination findings and is not consistent with the record as a whole, and because there is no record that a cane was ever prescribed for Plaintiff. (R. 19).

He accorded "significant weight" to Dr. Cornett's opinion that Plaintiff's walking was unimpaired because Dr. Cornett's findings are consisting with Dr. Mongeau's examination findings, his x-rays support his opinion, and the medical evidence as a whole supports his opinion. (R. 19-20). He also accorded "significant weight" to the opinions contained in the Physical Residual Functional Capacity Assessment form completed by Dr. Bullock because it is consistent with the record evidence and with the "clinical signs and normal findings" obtained in Dr. Cornett's and Dr. Mongeau's examinations, and because Dr. Bullock "has a significant understanding of the Social Security Administration disability programs and their evidentiary requirements." (R. 20). He also noted that there are no record medical opinions inconsistent with Dr. Bullock's opinion apart from the minor discrepancies he noted in the opinions of the other state agency physicians--Dr. Peril, and Dr. Eades. Id. Finally, the ALJ accorded "great weight" to the opinions of Dr. Peril and Dr. Eades to the extent they are consistent with Dr. Bullock's opinion. Id. But, to the extent that Dr. Bullock's opinion was more limiting with regard to pushing and pulling, and with regard to postural and environmental limitations, he

found Dr. Bullock's opinion is more consistent with the record, and accorded it more weight. Id.

Where, as here, there is no treating source opinion to be considered for controlling weight, all medical opinions must be evaluated by the Commissioner in accordance with factors contained in the regulations. 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2013). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

The ALJ in this case evaluated the medical opinions in accordance with relevant credibility factors. Plaintiff argues, however that the "ALJ did not give sufficient reasons for giving Dr. Mongeau's opinion little weight and failing to incorporate it into his RFC assessment." (Pl. Br. 15). Plaintiff argues that the lack of evidence of edema or neuropathy in the left foot is not necessarily inconsistent with Dr. Mongeau's opinion regarding needing an assistive device to climb stairs or walk on uneven terrain, and that

14

the ALJ did not accurately characterize the findings with respect to neuropathy. Id. at 14-15. She argues that "Dr. Mongeau's examination report cannot be read to indicate that she found no medical evidence of neuropathy" because Dr. Mongeau found that Plaintiff had poor balance and because she "indicated that [Plaintiff] might benefit from an upward titration of gabapentin" which was prescribed to treat his neuropathy. Id. at 13.

As Plaintiff suggests, the ALJ stated that Dr. Mongeau found no medical evidence of neuropathy and that she noted no evidence of edema or neuropathy in Plaintiff's left foot. (R. 17, 19). The ALJ also stated that "there were no examination findings of peripheral neuropathy." (R. 18) (emphasis added). The Court finds no error in the ALJ's evaluation of Dr. Mongeau's opinion. In relevant part, Dr. Mongeau reported:

> General: Morbidly obese male in no acute distress appearing his stated age. He presents to the clinic using a single point cane held in the right hand. He is able to transition from sit-to-stand and on and off of the examination table without assistance or difficulty. He is able to ambulate without the single point cane. He has positive loss of balance when attempting to walk on his heels or toes greater than 3 steps. He is unable to perform heel to toe straight line walking without loss of balance. He is unable to perform a single leg stance.
>
> . . .
>
> Sensation is intact to light touch in all dermatomes of the bilateral upper and lower extremities, as well as to pinprick. Proprioception is intact to the great toes bilaterally.

(R. 418).

> There were no signs of edema in the bilateral lower extremities.
>
> . . .

> I did not detect any . . . muscle wasting.
>
> . . .
>
> Impression: . . . orally controlled diabetes mellitus.
>
> With regards to the allegation of pre-diabetic edema and neuropathy to the left foot: The patient had completely intact sensory examination with pinprick and proprioception in all four extremities. Although the patient may have had prediabetic edema before he was diagnosed with diabetes, there is no evidence today to support edema.

(R. 419).

> The patient is on neuropathic pain medications Gabapentin and Cymbalta. He may benefit from further titration upward of the Gabapentin up to 2700 mg per day in three times a day divided doses.

(R. 420).

As quoted above, Dr. Mongeau's report is fairly represented by the ALJ's summarization. While it is true that Dr. Mongeau suggested upward titration of Plaintiff's Gabapentin, it is equally true that her examination found no evidence of neuropathy in Plaintiff's left foot and that his sensation and proprioception were intact. Although Dr. Mongeau found that Plaintiff had balance issues, the ALJ accounted for those issues by finding limits in Plaintiff's postural abilities, and discounted Dr. Mongeau's opinions regarding climbing stairs and walking on uneven surfaces because those opinions are not consistent with Dr. Mongeau's examination findings and are not consistent with the record as a whole, and because there is no record that a cane was ever prescribed for Plaintiff. (R. 19).

16

Plaintiff argues that in evaluating Dr. Mongeau's opinion, the ALJ improperly substituted his opinion for that of a physician. The ALJ did not do so. Rather, he evaluated all of the physicians' opinions and performed his administrative function to determine Plaintiff's RFC based upon all of the evidence in the record. Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946. Plaintiff has shown no error in discounting Dr. Mongeau's opinion. Therefore, it was not error to accord greater weight to the opinions of Dr. Cornett and Dr. Bullock.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 27th day of November 2013, at Kansas City, Kansas.

                                        s:/ John W. Lungstrum  
                                        **John W. Lungstrum**  
                                        **United States District Judge**